DAVID S. KIRSTEAD *vs.* FRANK BRYANT, and another.

Somerset.　Opinion March 25, 1904.

*Negligence.*　Defective machinery.　*Evidence.*　*Burden of Proof.*
No connection between cause proved and effect claimed.

In an action to recover damages caused by defective machinery the burden of proof rests upon the plaintiff to show that the injury received was occasioned by the defect as claimed.

This he may do either by direct proof or reasonable inference from the facts and circumstances in the case.

The plaintiff was injured by the sudden breaking of the eccentric rod of an engine and while he was at work with it. He claimed that the defective condition of the engine was the direct cause of the breaking of the eccentric rod and consequently the proximate cause of his injuries; and he thereupon contended that there was something wrong which was indicated by the pounding of the engine.

*Held;* that the plaintiff has failed to produce evidence of the fact that the pounding and the breaking of the eccentric rod were produced by one and the same cause.

The testimony shows conclusively that the pounding was in the cross-head; therefore, the cause of the pounding could not be the cause of the accident. Hence there is no connection between the cause proved and the effect claimed.

Motion for new trial.　Motion sustained.

Case for alleged negligence arising from defective machinery. After verdict for the plaintiff the defendants filed a general motion for a new trial.

The case is stated in the opinion.

*Forrest Goodwin,* for plaintiff.

*Geo. H. Morse and J. W. Manson,* for defendant.

SITTING:　WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

SPEAR, J.　This is an action in which the plaintiff seeks to recover damages for personal injuries received by the sudden break-

ing of the eccentric rod in the engine upon which it was the duty of the plaintiff to do certain work. He alleges, in substance, in his writ, that the engine upon which he was at work was defective and out of repair and that before the accident the defendants had due notice of the defective condition of the engine, and that although they had ample time in which to repair it, they neglected so to do; and that said defective condition of the engine was the direct cause of the breaking of the eccentric rod and consequently the proximate cause of the injuries received by him.

The verdict was for the plaintiff in the sum of $500. The defendant on motion seeks to set this verdict aside as against the evidence. The only evidence which the plaintiff produced tending to show a defective condition of the engine was an unusual noise made by the engine, defined by the witnesses in the case as "the pounding of the engine." The evidence is undisputed that the engine was but two years old, of proper construction and without any known defects or want of repair, except the pounding, which developed and first appeared the day before the accident. The plaintiff describes the discovery of the pounding as follows: "On the morning of the 16th of January, 1899, I was firing and working there as usual and I noticed the sound then of the engine. I had been at work in front of the furnace and had started back and Mr. Bryant came in and I told him there was something wrong with the engine." Mr. Bryant was one of the defendants and owners of the engine. The plaintiff testifies that the next morning, the 17th day of January, "I got up as usual and got up my steam and started up the engine as usual." Then he was asked "Whether or not she was pounding in the morning," and he answered, "Yes, just the same." There is no intimation nor claim on the part of the plaintiff, in his testimony, or on the part of any witness, in the whole case, that there was any other evidence or indication of a defect or want of repair in the engine except that disclosed by the pounding. Nor does the plaintiff's counsel so claim. In his argument he says, "the plaintiff is not able to say just what caused the pounding or just what caused the accident. His contention is that there was something wrong with the engine which *was indicated by the pounding*

*of the engine."* Therefore, the only question to be determined in this case is whether the cause which produced the pounding is the cause which produced the breaking of the eccentric rod.

The burden rests upon the plaintiff to assume the affirmative of this proposition. It is his duty to show, either by direct proof, or reasonable inference from the facts and circumstances in the case, that the pounding and the breaking of the eccentric rod were produced by the one and the same cause. We think he has failed to produce any evidence of this fact.

We will now consider the testimony of the plaintiff's witnesses with respect to its tendency to prove that the cause of the pounding was the cause of the accident. Mr. Goodrich succeeded the plaintiff in running the engine after it had been repaired by the substitution of a new eccentric rod and eccentric strap. The engine continued pounding and a Mr. Hersey was called in to fix it, and Mr. Goodrich, the plaintiff's witness, testifies as to what was done to remove the cause of the pounding, as follows: "Q. After you begun to run the engine, did Mr. Hersey come to fix it so far as the pounding? A. I believe so, about two days, it might have been a little longer. Q. Within two days after the accident? A. Yes, sir. Q. Do you know what part of it he adjusted? A. Something about the cross-head, the piston. Q. This is the cross-head? A. Supposed to be, yes, sir. Q. The pounding was something there that he put the wrench on and stopped? A. I don't know where the pounding was, but that is where he worked. Q. That is where he worked and the pounding stopped? A. Yes, sir." He also said: "It was pounding about as near as I could remember, when Mr. Hersey came to fix it, as it was the afternoon before the accident. It was pounding very near the same." This testimony shows in two ways that the cause of the pounding was not the cause of the accident. First, because the repair made by Mr. Hersey, which stopped the pounding, was not and was not claimed to be the defect which caused the accident. Second, because the cause of the pounding continued just the same after the accident, until it was removed, as before; although, in the meantime, complete repairs had been made upon the eccentric rod and strap, which would immediately, after

being made, have removed the cause of the pounding, if it had been due to any of the connections with them; but such repairs did not stop the pounding, hence the conclusion it was not there. But the pounding did stop immediately upon the repair of the cross-head, hence the conclusion that the cause was in the cross-head.

Mr. Hersey, who made the repair that stopped the pounding, testified as to what he found and did, as follows: "Q. Did you find what caused the noise? A. I did. Q. State what caused the noise? Mr. Goodwin: What do you mean before the accident? Q. After the accident? A. The noise was just the same before and after the accident. Q. You say, after the accident, after the machine was repaired, you noticed the same noise you noticed before the accident? A. Yes, sir. I located it accidently. I was there after the repairs and saw that the engine was running all right. I stopped the engine to feel my repairs over, and when I started the engine, or whoever did, when the engine was started, I went round on the other side of the engine, and in going round there, I done what I most always do, I felt of the crank to see if the crank was adjusted right. I passed down to the cross-head, and felt the cross-head over. In feeling of that cross-head my finger touched that nut. I thought I felt a little movement in the nut. I felt of that nut, and the nut was loose enough so that I could move it with my hand. . . . I went over and got a wrench and put the wrench on it. I did not turn down the wrench any, I simply put the wrench on the nut to see if the nut was loose, and I found the nut a little loose, and I tightened the nut up. Q. Did you hear any noise after that? A. No. I didn't hear any noise after that. The noise was stopped. That particular noise was stopped." This testimony as to the continuation of the pounding and what stopped it, is in exact accord with that of Mr. Goodrich, the plaintiff's witness, who succeeded the plaintiff in running the engine, and, it seems to us, establishes beyond question the conclusions drawn from his testimony, that the cause of the pounding, both before and after the accident, was in the cross-head.

In order to apply the testimony of the following witness to the cause of the accident, it may be well, at this point, to observe how

this engine was constructed with respect to the location of the cross-head and piston-rod with reference to that of the eccentric rod and strap, inasmuch as the eccentric rod and strap were the only things about the engine which broke.   The engine stands firm upon its foundation.   The piston-rod and cross-head are by themselves upon one side of the engine, and the eccentric rod and strap upon the other side.   Mr. Houghton, the witness called by the plaintiff, as an expert machinist of twenty-five years' experience, testified on cross-examination as follows: "Q.   Suppose the pounding was in the end of the cross-head, would you consider that dangerous? A.   It is liable to break something there because the whole force of the engine is applied to the cross-head.   Q.   What would that be apt to break?   A.   That is something that could not be determined by calculation what part of the cross-head might break. The connecting rod might break, the piston-rod might break, it would break in the weakest part, and that is hard to determine. No two engines ever break alike.   Q.   Would it have any tendency to break that wheel?   A.   No.   Q.   What would it break?   A.   If it was on that side, the first place would be the cross-head, one or the other of those connections."   He means by "that side" the cross-head side of the engine.   But nowhere does he intimate that a pounding in the cross-head side would break the eccentric strap or rod or anything else on the eccentric side.   But the testimony shows conclusively that the pounding was in the cross-head; therefore, the cause of the pounding could not be the cause of the accident.   There is no connection between the cause proved and the effect claimed.   The above conclusions are drawn from the testimony of the plaintiff's own witnesses, corroborated by the testimony of Mr. Hersey, who made the repairs.   The testimony of the defendants' witnesses all tends to support the above conclusion, and to present a theory of how the accident occurred, but as the plaintiff's own testimony fails to show that the proximate cause of the accident was the "pounding of the engine," it is unnecessary to consider the defendants' evidence.

*Motion sustained.    Verdict set aside.    New trial granted.*